OPINION. Black, Judge-. The two issues here involved are: (1) Did the respondent err in disallowing as a deduction from gross income $303,-044.17 as excessive compensation? (2) Did the respondent err in disallowing as a deduction from gross income $5,974.94 as advance premium deposits ? The applicable statute as to each issue is section 23 (a) (1) (A) of the Internal Revenue Code, which is set forth in the margin.[1] We shall consider the issues in the order stated. (1) During the taxable year petitioner paid to the six key men[2] named in our findings total basic salaries of $92,700 and total bonuses of $312,500, and paid to insurance companies for the benefit of five of the six men total premiums of $83,244.17 on annuity contracts, making a grand total of $488,444.17, which petitioner contends it is entitled to deduct under the statute as representing “a reasonable allowance for salaries or other compensation for personal services actually rendered.” The respondent allowed all of the basic salaries and a portion of the bonuses equal to the basic salaries, and disallowed the balance of the bonuses of $219,800 and all of the premiums or a total disallowance of the above mentioned amount of $303,044.17. A complete itemization of the totals here mentioned is in our findings. In the recent case of Miller Manufacturing Co. v. Commissioner, 149 Fed. (2d) 421, the Fourth Circuit, among other things, said: It is well settled that the question of what constitutes, for the tax deduction here in issue, reasonable compensation to a specific officer of a corporation, is essentially a question of fact, to be determined by the peculiar facts and circumstances in each particular case. LCitations.] These facts and circumstances vary so widely that each corporate tub must more or less stand upon its own bottom. [Citations.] A determination by the Commissioner of a reasonable allowance for compensation, in a specific case, carries a clear presumption of correctness and places upon the taxpayer the burden of proving that it is entitled to a deduction larger than that determined by the Commissioner. [Citations.] Has petitioner proven that it is entitled to a deduction larger than that determined by the respondent? We think it has. Petitioner has put in evidence a mass of evidentiary facts, much of which we have set out in our findings. From all of this evidence we have concluded and found as an ultimate fact that “a reasonable allowance for salaries or other compensation for personal services actually rendered” by the six key men consisted of their basic salaries, plus the total bonuses paid them under the mathematical formula adopted in 1939, but not any of the premiums paid or deposited on the annuity contracts under the retirement plan adopted in 1941. We think the respondent erred in disallowing a portion of the bonuses paid under the mathematical formula. This formula was adopted prior to the taxable year in an arm’s length transaction and was intended as the establishment of a sound, practical, and reasonable basis of compensation for personal services actually rendered. The respondent’s Regulations 103, section 19.23 (a)-6, provides in part as follows: * * * The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services. This test and its practical application may be further stated and illustrated as follows: [[Image here]] (21 Tlie form or method of fixing compensation is not decisive as to deduct-ibility. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bargain between (he employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid- (3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. * * * Applying this test of deductibility to the evidence in this proceeding, we are of the opinion that the basic salaries plus the total bonuses paid under the 1939 formula are not in excess of the “reasonable allowance” specified in the statute. They were paid purely for personal services actually rendered and were never intended as a guise for something else. Although all of the six key men were also stockholders, the payments in question bore no relation to their stock ownership or, in the case of Draper, Dana, and Brown, to the stock ownership of themselves and their wives. The payments were, we think, reasonable when viewed in the light of the nature of petitioner’s business and the personal services rendered, the history of petitioner and its large earnings over a period of years, the treatment received by petitioner’s stockholders, the fact that such payments were based upon definite agreements entered into before the services were rendered, and the commissions customarily paid for buying and selling wool. We hold, therefore, that the basic salaries plus the total bonuses paid under the 1939 formula are deductible. Cf. Austin v. United States, 28 Fed. (2d) 677; Gray & Co. v. United States, 35 Fed. (2d) 968; Thomas N. Perkins, 33 B. T. A. 606, 622. We think the following quotation from the court’s opinion in Gray & Co. v. United States, supra, applies with equal force to the facts of the instant case as it did to the facts of that case: * * * The action of the board of directors under ordinary circumstances in fixing the salaries raises a fair presumption of reasonableness in such case, and this presumption is the stronger in this case because the practice of compensating on what may be called a contingency was a settled policy of the corporation extending over a period of years prior to the years in question here and after these years, and in each year it was based upon the profits for that year. If the profits were small, the sum realized from the percentage was small, and if the profits were large, the sum so realized was larger, depending in each year upon the loyalty, vigilance, and intelligent effort, and the stimulated ambition of each of the parties. The success of the business was largely due to the individual efforts of these men, and the diligence they displayed and attention they gave to the particular branch of the business allotted to them. Its earnings did not depend upon the activities and efforts of a large number of subordinates. So it was, we think, in the instant case. Kegarding the $83,244.17 premiums and advanced premium deposits on annuity contracts paid to certain insurance companies for the benefit of Draper, Dana, Green, Brown, and Clarke, we are of the opinion that the respondent’s disallowance of this amount as representing excessive compensation should be sustained. The retirement plan was not adopted until more than eight months of the taxable year had passed. We think that when this amount is added to the $405,200 of basic salaries and bonuses which we have already held to be allowable, the result is excessive compensation. Excessive compensation can not be allowed as a deduction under the provisions of 23 (a) (1) (A). We, therefore, sustain the respondent’s determination as to the $83,244.17. It is proper to point out that no contention is made by petitioner that the $83,244.17 in question is deductible under section 23 (a) and (p), relating to pension trusts, or any other provision of the statute save and except 23 (a) (1) (A). If we are wrong in denying petitioner a deduction for the $83,244.17 in question on the ground stated above, nevertheless, we think that part of the $83,244.17 which represented advance premium deposits to pay premiums for 1942 and 1943 would still be nondeductible for the reasons stated under issue 2, immediately following. (2) The l’eason given by the respondent in the statement attached to the deficiency notice for disallowing the advance premiums of $5,974.94 was that this did not represent “an accrued expense for the taxable year.” He makes the same contention in his brief, plus the additional contention that the payment of this amount by petitioner in the taxable year was not a “necessary” expense in 1941. The payment was intended as additional compensation for Keller, Scott, Mc-Causland, and Hamilton. The respondent does not contend that this amount when added to the compensation for these four individuals would result in excessive compensation. In his brief he says that these four employees do not appear to have been overcompensated. In his brief Respondent submits the following in support of his contention: * * * It appears that these advance premiums were not required to have been paid by the petitioner and would have been refunded to it by the respective insurance companies if a demand liad been made by petitioner prior to the time such premiums became due under the policies. It is submitted that a taxpayer on an accrual basis may not claim as a deduction an advance payment of an amount for which it was not obligated. Such advance premiums should be deductible only in the year in which they are due. They were not a “necessary” expense in 1041. We think respondent must be sustained in this contention. With reference to the payment of these advanced premiums, it has been stipulated as follows: In addition to paying the first annual premiums due in 1941, the petitioner paid to the insurance companies in 1941 amounts sufficient, when interest was added, to cover the annual premiums on the policies when they became due in 1942 and in 1943. * * * These amounts would have been repaid by the insurance companies to the petitioner if, before such premiums became due, the petitioner had requested such repayment and would have been so repaid, if the annuitant had died before the premiums became due, to the petitioner except that in the case of the Columbian National Life Insurance Company the payment, if the annuitant had died, would have been made to the beneficiaries named in the policies. The petitioner did not intend in 1941 to ask for a refund of any of the aforesaid advance premium payments. The fact that petitioner did not intend in 1941 to ask for a refund of any of these advance premiums it seems to us is immaterial. The fact remains that it was not obligated to make payment of these advance premiums to the insurance companies until such premiums became due, and, having made them, it could have had them repaid by the insurance companies at any time prior to the time such premiums became due. This seems to be true as to all the insurance companies, including the Columbian National Life Insurance Co., although in the latter case there would have been some difference in repayment if the annuitant had died before such advance premiums became due. We do not think this latter feature makes any difference as to petitioner’s right to accrue the -advance premiums in 1941. At any rate, the petitioner does not make any point that the advance premiums deposited on the policies in the Columbian National Life Insurance Co. should be treated differently from the advance premiums deposited on the other policies. There is no segregation of the premiums which would enable us to do this, even if we should decide that it should be done. The respondent in his determination of the deficiencies has allowed petitioner a deduction for the 1941 premiums paid on these particular policies involved in issue 2. He has disallowed the $5,974.94 advance premiums deposited on these policies for the years 1942 and 1943 as not properly accruable as an obligation in 1941, and in this we sustain him. Decision will be entered under Rule 50. SEC. 23. DEDUCTIONS PROM GROSS INCOME. In computing net income there shall be allowed as deductions : (a) Expenses..— (1) Trade or business expenses..— (A) In General. — All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * * We have included Charles Dana Draper as a key man.